## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REALTIME DATA, LLC, d/b/a IXO, | C.A. No. 17-800-CFC |
| Plaintiff, | **Consolidated Actions** |
| v. | |
| ARRAY NETWORKS INC., | |
| Defendant. | |

## DEFENDANTS' CONSOLIDATED OPENING BRIEF
## IN SUPPORT OF MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM (35 U.S.C. § 101)

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.    INTRODUCTION ...................................................................... 1

II.   STATEMENT OF FACTS ......................................................... 2

      A.    The Asserted Patents ..................................................... 2

      B.    The Court's Orders Finding the Asserted Patents Directed to
            Abstract Ideas Ineligible under Section 101. .................... 3

III.  ARGUMENT ............................................................................. 4

      A.    No Claim Construction Disputes Preclude Dismissal ........ 4

      B.    Rulings of Other District Judges Don't "Show" Inventiveness ........ 5

      C.    General Statements in Unrelated Compression Patents Are
            Irrelevant to Whether Plaintiff's Patents Claim Abstract Ideas ........ 7

      D.    Plaintiff's "Pen and Pencil" Argument, Already Considered and
            Rejected by the Court, Remains Irrelevant. ..................... 8

      E.    Adding Quotations from the Patents Adds Nothing to the
            Record Before the Court. .............................................. 8

      F.    Plaintiff's New Patent-Specific Allegations Don't Alter the
            Court's Prior Analysis in Dismissing the Complaints. ........ 9

            1.    Plaintiff's New Allegations Don't Change the Court's
                  Prior Eligibility Analysis of the '825, '728 and '203
                  Patents. ........................................................... 9

                  a)   The '825 Patent ........................................ 10

                       (1)   The '825 Patent Still Fails Alice Step One ...... 11

                       (2)   The '825 Patent Still Fails Alice Step Two ...... 13

                  b)   The '728 Patent ........................................ 14

                       (1)   The '728 Patent Still Fails Alice Step One ...... 15

                       (2)   The '728 Patent Still Fails Alice Step Two ...... 16

                  c)   The '203 Patent ........................................ 17

                       (1)   The '203 Patent Still Fails Alice Step One. ...... 18

                       (2)   The '203 Patent Still Fails Alice Step Two ...... 19

i

2.    Plaintiff's New Allegations Don't Change the Court's Prior Eligibility Analysis of the '908, '530 and '458 Patents. ...................................................................22

a)    The '908 Patent..........................................................22

(1)    The '908 Patent Still Fails Alice at Step One. ...........................................................22

(2)    The '908 Patent Still Fails Alice at Step Two. ...........................................................23

b)    The '530 Patent..........................................................24

c)    The '458 Patent..........................................................27

(1)    The '458 Patent Still Fails Alice at Step One. ...........................................................28

(2)    The '458 Patent Still Fails Alice at Step Two. ...........................................................29

3.    Plaintiff's New Allegations Don't Change the Court's Prior Eligibility Analysis of the '751 Patent........................32

IV.    CONCLUSION............................................................34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d at 1121 (Fed. Cir. 2018) ...................................................................27

*Adaptive Streaming Inc. v. Netflix, Inc.*,
   836 F. App'x 900 (Fed. Cir. 2020) ..................................................................21

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ..............................................................16, 17

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021) ..................................................................20

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) .......................................................................30

*Camreta v. Greene*,
   563 U.S. 692 (2011)...........................................................................................6

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) .......................................................................27

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) .........................................................................31

*CLS Bank Int'l v. Alice Corp. Pty*,
   717 F.3d 1269 (Fed. Cir. 2013) ................................................................*passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................5, 18, 29

*CustomediaTechs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020) ............................................................11, 26, 28

*CyberFone Sys., LLC v. CNN Interactive Group, Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) .................................................................4, 5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .........................................................................18

*Diamond v. Diehr*,
    450 U.S. 175 (1981)...........................................................................................14

*Elec. Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ....................................................16, 18, 29, 30

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016) ...................................................................8, 24

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .........................................................................16

*McRO, Inc. v. Naughty Dog, Inc.*,
    49 F. Supp. 3d 669 (C.D. Cal. 2014) ..................................................................7

*MySpace, Inc. v. Graphon Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012) .........................................................................12

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ..........................................................15, 19, 31

*In re Rudy*,
    956 F.3d 1379 (Fed. Cir. 2020) .........................................................................27

*SAP America v. Investpic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .........................................................................10

*Simio, LLC v. FlexSim Software Prod., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ....................................................................5, 20

*SmileDirectClub, LLC v. Candid Care Co.*,
    505 F. Supp. 3d 340 (D. Del. 2020)............................................................5, 14,

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ....................................................................9, 26

*Threadgill v. Armstrong World Indus., Inc.*,
    928 F.2d 1366 (3d Cir.1991) ...............................................................................6

*In re TLI Comms. LLC*,
    823 F.3d 607 (Fed. Cir. 2016) ...............................................................13

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. 2019)....................................................27

*WhitServe LLC v. Dropbox, Inc*,
    No. 18-665-CFC, 2019 WL 3342949 (D. Del. July 25, 2019)..........................27

**STATUTES**

35 U.S.C. § 101 ..............................................................................*passim*

**RULES**

Fed. R. Civ. P. 12(b)(6)..........................................................................20

## I.    INTRODUCTION

This Court has twice considered whether the seven patents asserted against Defendants claim eligible subject matter under 35 U.S.C. § 101, and twice concluded that they don't.

After issuing an extensive written decision, the Court allowed Plaintiff to amend its complaints. Those amended complaints add volume, but no meaningful substance. Instead, Plaintiff simply recasts legal arguments as factual allegations.

The amended complaints improperly invoke nonbinding decisions of other district judges that add nothing to the Court's previous Section 101 analysis.  The complaints allege that statements in unrelated data compression patents "confirm" that the inventions claimed in *these* patents weren't "well-understood, routine, or conventional," or abstract ideas, but those statements simply show that *others* sought to improve data compression methods—not that the asserted patents made patent-eligible improvements. Other newly added "allegations" merely repeat, often verbatim, what is disclosed and claimed in the patents themselves, including the references cited therein, or other arguments previously considered and twice rejected by the Court.

In sum, the amendments add little more than verbiage. Plaintiff's new allegations—many irrelevant, others inaccurate or even illogical, and almost all

repetitive of past legal arguments—don't warrant a reversal of the Court's prior conclusion that the asserted patents are ineligible for patent protection.

## II.   STATEMENT OF FACTS

### A.   The Asserted Patents

Plaintiff Realtime Data, LLC asserts three or more of seven patents against each Defendant.

Three patents (U.S. Patents Nos. 8,717,203; 8,933,825; and 9,054,728), which share a common specification, are titled "Data Compression Systems and Methods," and describe certain methods and systems for compressing data that look beyond data descriptors (*e.g.*, .doc or .txt) to the attributes of the data itself. *See* '728 patent at 3:59-5:11.

Three patents (U.S. Patent Nos. 7,415,530; 9,116,908; and 10,019,458), which share a common specification, are titled "System and Methods for Accelerated Data Storage and Retrieval." The patents relate to "improving data storage and retrieval bandwidth utilizing lossless data compression and decompression." '908 patent at 1: 17-18. These patents purport to overcome limitations in prior art systems by selecting encoding techniques "based upon their ability to effectively encode different types of input data." *Id.* at 12:5-7.

U.S. Patent No. 9,667,751, titled "Data Feed Acceleration," purports to improve on prior art data compression systems and methods through a "data

compression ratio [that] is substantial and repeatable on each data packet" that has "no packet-to-packet data dependency." '751 patent at 7:55-66.

## B. The Court's Orders Finding the Asserted Patents Directed to Abstract Ideas Ineligible under Section 101.

The procedural history is set forth in the May 4, 2021 order (D.I. 41 at 7-8)[1], which found all patents "directed to the concept of manipulating information using compression. Because data compression is, without more, simply a form of data analysis, the claims are directed to abstract ideas." *Id*. at 41.

The Court further found that the patent claims don't contain "additional features" to establish inventiveness, but "simply apply an abstract idea on generic computers with generic techniques." *Id*. The Court noted that the "asserted patents allow the use of any compression method" and don't "teach how to achieve the claimed efficiency benefits, beyond directing the skilled artisan to apply well-known techniques." *Id*. at 42. In short, to "the extent that the patents teach anything, it is simply the benefits of data compression." *Id*. at 41.

The Court permitted Plaintiff to amend its complaints, *id.* at 53, but the amendments don't change the fact that the patents claim abstract ideas, and that there are no inventive additions to support patent eligibility. Indeed, Plaintiff has already presented many of *the same* amendments in its First Amended Complaint ("FAC")

---

[1] All D.I. citations refer to the lead case, No. 17-800-CFC, unless otherwise noted.

against Kaminario. *Realtime Data, LLC v. Kaminario* ("*Kaminario*"), No. 19-350-CFC, D.I. 18 (Aug. 16, 2019). Thus, the Court has already considered many of the amendments now presented by Plaintiff.

## III. ARGUMENT

The legal standards for determining if patents claim eligible subject matter are well known to this Court. D.I. 41 at 8-11. Because the Court has twice considered Plaintiff's allegations, Defendants focus here on Plaintiff's newly added material.

### A. No Claim Construction Disputes Preclude Dismissal.

In its FAC against Kaminario, Plaintiff alleged constructions for five terms, and argued that these alleged constructions demonstrated a dispute that precluded dismissal. *Kaminario*, D.I. 18 ¶ 9-10; D.I. 33 at 29. The Court has thus already considered, and rejected, Plaintiff's argument that claim construction is necessary. Here, Plaintiff merely re-alleges *the same* five constructions in its amended complaints against Defendants. The Court should thus reach the same result here. Moreover, while listing a half-dozen terms that allegedly require "fact-based claim construction,"[2] Plaintiff fails to explain "how the [Section 101] analysis would change" under its proposed constructions. *CyberFone Sys., LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014). Because Plaintiff's

---

[2] D.I. 61 ¶ 9 (proposing constructions of "analyze"; "compressing/compressed/compression"; "data stream"; "data block"; and "descriptor").

proposed constructions of terms such as "analyze" and "data block" don't change the Section 101 analysis, formal claim construction is unnecessary to dismiss Plaintiff's claims again. *See id.* at 991-93 & n.1 (affirming ineligibility under Section 101 even though district court didn't construe claims).[3]

Indeed, even if the terms were construed as Plaintiff proposes, "none of [Plaintiff's] claims amount to 'significantly more' than the abstract idea of [compressing data] using generic scanning and processing technology." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Because they don't impact the outcome, the Court may adopt Plaintiff's proposed constructions, without "full, formal claim construction," at this stage.[4] *SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340, 348 (D. Del. 2020).

**B.      Rulings of Other District Judges Don't "Show" Inventiveness.**

Plaintiff's amended complaints aver that other judges have concluded that the asserted patents claim patent-eligible subject matter under Section 101.[5] But again,

---

[3] *See also Simio, LLC v. FlexSim Software Prod., Inc.,* 983 F.3d 1353,1366 (Fed. Cir. 2020) (Claim construction not required where plaintiff "has not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis.").

[4] If Plaintiff could plead claim construction to avoid a motion to dismiss and subsequently modify its proposed constructions, it would exploit a procedural loophole to avoid early resolution of ineligible patents.

[5] Notably, the *Actian* court denied the motion *without* prejudice.

*these same allegations* were made in Plaintiff's FAC, and argued in prior briefing in 2019. *Kaminario*, D.I. 18 ¶¶ 13-14, D.I. 33 at 43. Plaintiff alleges that these prior rulings "show that the patents are directed to patent eligible subject matter, and that they are also inventive." D.I. 61 ¶ 14. But this Court has already considered that other judges have reached different conclusions on patent eligibility. D.I. 41 at 45 n. 4. As determined by the Court before, this fact in no way precludes this Court from deciding, as it has done twice, that the patents are invalid under Section 101. *Id*.

"A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation and internal quotation marks omitted). "Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration by this Court of similar contentions.'" *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991). "Where a second judge believes that a different result may obtain, independent analysis is appropriate." *Id*.

Moreover, this Court was already aware of the other decisions when deciding that the asserted patents are ineligible.  D.I. 41 at 45 n.4.  Invoking these cases in the amended complaints adds nothing that the Court hasn't already considered.

### C.     General Statements in Unrelated Compression Patents Are Irrelevant to Whether Plaintiff's Patents Claim Abstract Ideas.

With respect to each asserted patent, Plaintiff alleges that 2012 and 2013 patents filed by Defendants Altera and Western Digital "admitted that there was still a technical problem associated with computer capacity and a need for a more efficient compression system." *E.g.*, D.I. 61 ¶¶ 85-86. These allegations are again *identical* to those made in Plaintiff's FAC against Kaminario and argued in Plaintiff's briefing. *Kaminario*, D.I. 18 ¶¶ 25-27. As before, these allegations should not impact the Court's conclusion that Plaintiff's patents are invalid.

Indeed, general statements in unrelated patents don't illuminate whether the *specific* claim "limitations recited in [Plaintiff's] patent at issue here" were "well-understood, routine or conventional" at the time of the continuation patents' effective filing dates and whether the claims are directed to abstract ideas (D.I. 61 ¶ 87). *Cf. McRO, Inc. v. Naughty Dog, Inc.*, 49 F. Supp. 3d 669, 677 (C.D. Cal. 2014) ("The validity of Defendants' patents is not before the Court, and Plaintiff has cited no authority for the proposition that Defendants' obtaining them operates as an estoppel in this case. There may be numerous factual differences between Defendants' patents and those at issue here.").

**D.   Plaintiff's "Pen and Pencil" Argument, Already Considered and Rejected by the Court, Remains Irrelevant.**

With respect to all asserted patents, Plaintiff's amended complaints dispute the Court's conclusion that the claimed abstract ideas could be completed with "pen and pencil." *E.g.*, D.I. 61 ¶¶ 18, 50, 85. But as the Court already held, "[n]othing prevents [the claimed] analysis from being done on pen and paper." D.I. 41 at 48, *see also id.* at 22 ("The disclosed analysis could be implemented using pen and paper."). And while some courts have used a "pen and paper test" in considering Section 101 challenges, "the inability for the human mind to perform each claim step does not alone confer patentability." *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016).

Moreover, Plaintiff's "pen and pencil" allegations merely restate as pleading an argument previously lost by plaintiff on Western Digital's Motion. *See Realtime Data v. Tegile*, No. 18-1267-CFC, D.I. 20 at 12-14. The Court need not reconsider it merely because Plaintiff recast it as an allegation.

**E.   Adding Quotations from the Patents Adds Nothing to the Record Before the Court.**

The amended complaints add quotations from the asserted patents and reference prior art cited therein. Because those patents were attached to the original complaints, they add nothing that wasn't before the Court twice previously. *See, e.g.*, D.I. 41 at 20 (evaluating "simple flow chart" in specification of '825 patent); *accord,*

*e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (finding claims ineligible despite "'200 pages of code' attached to the specifications" that weren't quoted in complaint).

### F.    Plaintiff's New Patent-Specific Allegations Don't Alter the Court's Prior Analysis in Dismissing the Complaints.

Plaintiff asserts infringement of patents from three separate families.

#### 1.    Plaintiff's New Allegations Don't Change the Court's Prior Eligibility Analysis of the '825, '728 and '203 Patents.

The '825, '728 and '203 patents, titled "Data Compression Systems and Methods," describe a system for compressing data that looks beyond data descriptors (*e.g.*, .doc or .txt) to the attributes of the data itself. As the Court correctly held in May, the claims of these patents are directed to patent ineligible subject matter. D.I. 41 at 37.

The claims fail *Alice* step one because they merely recite the abstract idea of transforming data—specifically, "compressing data based on the content of that data." *Id*. at 27. They fail step two for lacking an inventive step, reciting only routine and conventional techniques that fail to add significantly more to the abstract idea itself. *Id.* at 28 (holding the "claims do not add any additional features that make them patent eligible").

Plaintiff's attempt to create a factual dispute by injecting specification excerpts fails because the patent admits "that the technologies and methods used in

the claimed analyses were well-known and routine" and because "the inventive feature in a patent cannot be the abstract idea itself." *Id.* at 13-14 (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (holding "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept")).

### a)    The '825 Patent

The Court previously found the '825 patent "directed to the abstract idea of compressing data based on the content of that data." D.I. 41 at 23. The Court noted that representative "Claim 18 consists entirely of general, abstract steps": "'associating [an] encoder,' 'analyzing data,' 'identifying a [] parameter,' and 'compressing.'" *Id.* at 20.   "The other requirements of the claim are logical conditions that limit the claim's scope and do not change the focus of the claims from the abstract manipulation of information." *Id*. Nothing in the patent, the Court pointed out, "goes beyond conducting data analysis and performing mathematical operations." *Id.* at 22. In that respect, noted the Court (*id.* at 21), the '825 patent claims "are not materially different" from patents claiming ineligible subject matter in *SAP America v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018).

After finding the '825 patent directed to an abstract idea, the Court found no "inventive concept" sufficient to transform it into patent eligible subject matter. Whether considered individually or as an ordered combination, the claims simply

recite an abstract idea and then instruct to "apply that idea." D.I. 41 at 23. Although Plaintiff argued that the patent improves computer functionality, the written description states that the claimed methods could be implemented with "a general purpose computer or any machine or device" with a microprocessor, using "many conventional content dependent techniques" for compression, including those "currently well known." *Id.* at 24. The claims don't "even require physical components," and provide no "technical improvement to computer technology." *Id.* at 25.

### (1)   The '825 Patent Still Fails *Alice* Step One

Plaintiff's amended complaints allege that the '825 claims aren't abstract because they "are limited to particularized technological solutions that improve computer capabilities—*e.g.*, digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently." D.I. 61 ¶ 75.

To support its conclusory assertion, Plaintiff emphasizes that the '825 patent claims concern "*digital* data," which allegedly "reflect an improvement to computing technology and computers." *Id.* But many patents that allegedly improve computing technology with respect to digital data—*e.g.*, through improved storage, processing, analysis, or output—have been found ineligible. *See CustomediaTechs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("generic speed

11

and efficiency improvements inherent in applying the use of a computer to any task"
not directed to patent-eligible improvement); *MySpace, Inc. v. Graphon Corp.*, 672
F.3d 1250, 1267 (Fed. Cir. 2012) (collecting cases).

> Many software and business method patents simply describe a basic,
> well-known concept that has been implemented or applied using
> conventional computer technology. These "inventions" rely on
> functions—such as storing data, and organizing, outputting, and
> displaying information—that any general purpose computer
> routinely performs. While running a particular process on a
> computer undeniably improves efficiency and accuracy, cloaking an
> otherwise abstract idea in the guise of a computer-implemented
> claim is insufficient to bring it within section 101.

*MySpace, Inc.*, 672 F. 3d at 1267.

Next, quoting from the '825 patent specification, plaintiff recites problems in
prior art compression methods and systems using file descriptors. D.I. 61 ¶ 78. The
"new" allegations also reiterate that the claimed compression systems don't analyze
data based on a descriptor, but rather on content. *Id.* ¶ 79. These allegations merely
paraphrase the '825 patent, which the Court has already addressed at length.

According to its new allegations, the '825 patent claims aren't directed solely
to data compression based on data content, "but also to *selecting an encoder to
encode data* based on … the content of the data." D.I. 61 ¶ 75. However, using "well
known" technology, such as encoders,[6] to carry out an abstract idea doesn't make it

---

[6] The '825 patent identifies "lossless encoding techniques *currently well known
within the art.*" '825 patent at 7:8-9.

any less abstract. *See In re TLI Comms. LLC*, 823 F.3d 607, 610 (Fed. Cir. 2016) (claims "directed to the use of conventional or generic technology in a nascent but well-known environment" didn't survive step one).

### (2)   The '825 Patent Still Fails *Alice* Step Two

Plaintiff alleges that the '825 patent claims recite an "unconventional combination of elements." D.I. 61 ¶ 80.[7] The claims require (1) determining the attribute of data by its content; (2) if an attribute is identified, using an encoder associated with the attribute to compress the data; and (3) if an attribute isn't identified, using an encoder associated with a non-identifiable attribute. Applying known compression technology after first determining data type is anything but unconventional.

Plaintiff alleges that the claims are "inventive over prior art and not well-understood, routine, and conventional" because they were allowed over "hundreds of references." D.I. 61 ¶ 81. Plaintiff improperly conflates patent eligibility with novelty. *See CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1302-03 (Fed. Cir. 2013) ("The eligibility inquiry is not an inquiry into obviousness, novelty, [or] enablement … [it] determines whether a claim is limited meaningfully to permissible subject matter, as distinct from the validity requirements of the other sections.");

---

[7] Plaintiff alleges that claim 1 isn't representative. D.I. 61 ¶ 82. But additional limitations—*e.g.*, claim 2's added step of *buffering* data after receipt—do not make it less abstract or conventional.

13

*Diamond v. Diehr*, 450 U.S. 175, 190 (1981) ("[W]hether a particular invention is novel is 'wholly apart from whether the invention falls into a category of statutory subject matter.'") (citation omitted).

**b)**     **The '728 Patent**

The '728 patent shares the same specification as the '825 patent, and as the Court previously recognized, is directed to the "same idea": "compressing data based on the content of that data." D.I. 41 at 27. "Both patents are directed to abstract information processing." *Id.* With respect to step two, the claims "teach nothing beyond" applying an abstract idea on "generic computer technology" such as processors and compression encoders. *Id.* at 28.

The '728 has three independent claims. Claims 1 and 24 claim a system for compressing data comprising generic processors and encoders capable of analyzing data blocks and performing content-dependent data compression. Claim 25 claims a computer-implemented method of content-dependent data compression. "When the only difference between claims is the form in which they are drafted, it is appropriate to treat them [] 'as equivalent for purposes of patent eligibility under § 101.'" *SmileDirectClub*, 505 F. Supp. 3d at 348 (quoting *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (US)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012)). Because the dependent claims merely add steps or conditions to the workflow in the independent

claims without adding any technological improvements, they don't affect the patentability analysis. *Id.*

### (1)     The '728 Patent Still Fails *Alice* Step One

The '728 patent claims are directed to systems and methods of compressing data based on the type of data. While the claims pay lip service to performing this compression based on the type of data rather than the file descriptor, the patent nowhere instructs how to compress different types of data, or even how to examine data blocks. The patent doesn't claim any specific technological improvements, such as novel technologies for compressing specific types of files or specific inventive software or hardware configurations for performing the claimed methods; rather, it merely claims the abstract idea of choosing an undisclosed compression method based on data type.

The independent claims are directed to systems and methods for compressing data. "A process that start[s] with data, add[s] an algorithm, and end[s] with a new form of data [is] directed to an abstract idea." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The dependent claims merely add steps of abstract data analysis or limit claims to particular operations. These are inconsequential variations of the same abstract idea.

### (2)     The '728 Patent Still Fails *Alice* Step Two

The Federal Circuit has instructed district courts to consider whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

The '728 patent discloses black boxes—"modules," "encoders," and "memory"—that conduct the claimed content-based compression in an undisclosed manner. Any known encoding technique can be used, so long as it achieves data compression. "[T]he claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The '728 patent doesn't teach or claim what specific compression methodologies to use for specific data blocks; rather, it asserts that "many conventional content dependent techniques" exist. '728 patent at 3:1-2. The claims, "defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016).

Plaintiff alleges that the dependent claims contain limitations not found in the independent claims. But performing the compression in real-time, a data token and

16

compressed data block, lossy or lossless compression, and storing a compressed data block, are meaningless distinctions. None change the abstract workflow of the independent claims, add any technical improvements, or add inventive features. All rely on generic processors and compression encoders. Ultimately, they do no more than "describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs*, 838 F.3d at 1269.

### c)      The '203 Patent

The '203 patent is the decompression counterpart to the '728 patent, and similarly is directed "to reduc[ing] the data decoding time" using unspecified, generic techniques to decode data based on the data's content. '203 patent at 14:42-15:52. Representative Claim 14 recites a system comprising a data decompression processor to analyze data tokens that indicate how a data block was compressed, a decompression decoder that decompresses the data block based on that analysis, and an output interface. *Id*. at claim 14. Thus, Claim 14 requires that data be analyzed to identify the decompression technique to use, then decompress and output the data.

It is therefore directed to the abstract idea of technique-specific data compression and lacks an inventive concept. The specification explicitly provides that the decompression merely utilizes generic, routine and conventional techniques, like "lossless encoding techniques *currently well known within the art*." *Id.* at 14:66-

17

15:3. It uses "methods *known by those skilled in the art* to extract the data compression type descriptor associated with the data block." *Id.* at 14:52-57. And the purported invention may be implemented on "a general purpose computer or any machine or device having any suitable and preferred microprocessor architecture." *Id.* at 6:29-31.

### (1)    The '203 Patent Still Fails *Alice* Step One.

The '203 patent claims are directed to the abstract idea of data manipulation via analysis, compression, decompression, and storage. *See Elec. Power*, 830 F.3d at 1353-54 (collecting, processing, or analyzing information, without more, is directed to an abstract idea); *Content Extraction*, 776 F.3d at 1347 (collecting, recognizing, and storing information is directed to an abstract idea).

The claims don't recite a technical solution to a technical problem, but merely recite generic processes and machinery in a result-oriented way. Unlike *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), the '203 patent doesn't claim *how* data is analyzed, stored, compressed, or transmitted. The encoders are described essentially as generic components that can be implemented with any combination of "hardware, software, [and] firmware" and employ "encoding techniques well known in the art." '203 patent at 6:24-7:16; *see id.* at 14:66-15:10 (similarly describing decoders). Ultimately, nothing in the claims

18

provides a specific solution that "improve[s] the functioning of the computer itself." *Alice*, 573 U.S. at 225.

Mere data manipulation is abstract. *See RecogniCorp,* 855 F.3d at 1327 ("A process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea" (citation omitted)). As in *RecogniCorp*, the claims of the '203 patent recite nothing more than a system for manipulating data from a decompressed state—*i.e.*, selecting a decompression technique based on the method of compression, which is itself based on the data's content.

### (2)     The '203 Patent Still Fails *Alice* Step Two.

The claims also fail to provide an inventive concept; they merely recite generic computer components used in routine, conventional ways. *See* '203 patent at 14:66-15:3 ("lossless encoding techniques *currently well known within the art*"), 14:52-57 ("methods known by those skilled in the art to extract the data compression type descriptor associated with the data block"), 6:29-31 ("general purpose computer or any machine or device having any suitable and preferred microprocessor architecture"). Further, the claimed ordering of the elements isn't an inventive concept because "simply combining understood steps and generic hardware in a logical, straightforward sequence in order to implement an abstract idea does not provide an 'inventive concept.'" D.I. 41 at 52 (*citing BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

19

Plaintiff's attempt to manufacture factual disputes ignores the Court's correct holding that the '203 patent expressly invokes known and conventional techniques, and Plaintiff's alleged inventive concept mimics the abstract idea itself. D.I. 41 at 13-14. The new allegations amount to nothing more than legal conclusions, conclusory allegations, and contradictions to the '203 patent itself. *See id*. at 14 ("none of the cited paragraphs identify an inventive feature that is distinct from one of the claimed abstract ideas"); *see also Simio, LLC*, 983 F.3d at 1365 ("We disregard conclusory statements … under Rule 12(b)(6) … [including a] statement that a feature 'improves the functioning and operations of the computer'"); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) (conclusory allegations that asserted claims weren't "routine or conventional").

The amended complaints argue that the '203 patent improves "computer capabilities" such as "digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently." D.I. 65 ¶ 79. They recite specification statements that the '203 patent solved problems with traditional compression techniques by providing combination data compression, both content dependent and content independent. *Id*. ¶¶ 81-84. These allegations ignore the Court's holding that the '203 patent doesn't "provide a technical solution to a technical problem because [it does] not teach how to engineer an improved system. The asserted patents allow the use of *any* compression method." D.I. 41 at 42 (citing

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018)). And the claims themselves are result-based, failing to explain how a skilled artisan would address the purported technical problem. D.I. 41 at 46.

Plaintiff again improperly conflates patent eligibility with novelty, alleging that the PTO allowed the claims over prior art references. D.I. 65 ¶ 85. The file history nowhere addresses subject matter eligibility, nor identifies an inventive concept under *Alice*. And even if it did, the PTO's novelty and obviousness analysis are distinct from the patent ineligibility question. *See Alice*, 717 F.3d at 1302-03 ("The eligibility inquiry … determines whether a claim is limited meaningfully to permissible subject matter, as distinct from the validity requirements of the other sections."); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020) ("[W]hat may be novel and non-obvious may still be abstract.").

The dependent claims' recitation that the encoder doesn't perform decompression, of a decompression sequence, requiring performance in real-time, and permitting lossy techniques (D.I. 65 ¶ 88), are again meaningless distinctions. None depart from the abstract idea, add any technical improvement, recite an inventive step, or otherwise diverge from techniques explicitly described in the specification as "*currently well known within the art.*" '203 patent at 16:28-42; *see also* D.I. 41 at 16 ("The dependent claims also do not add any limitation that affect the § 101 analysis.").

21

2.   **Plaintiff's New Allegations Don't Change the Court's Prior Eligibility Analysis of the '908, '530 and '458 Patents.**

a)   **The '908 Patent**

The Court previously found the '908 patent "directed to the combination of two abstract ideas." D.I. 41 at 30. Plaintiff's amended allegations don't change that conclusion.

(1)   **The '908 Patent Still Fails *Alice* at Step One.**

Plaintiff alleges that the '908 patent claims aren't abstract because they are limited to "digital data compression systems and methods to improve the ability of a computer system to compress and store data blocks on memory devices more efficiently." D.I. 61 ¶ 17. Because the '908 patent claims involve *digital* data and require storing compressed data blocks on a memory device, they are purportedly "incapable of being performed by pen and pencil." *Id.* at 18. But these new arguments (couched as allegations) don't impact the Court's eligibility analysis. That Plaintiff's amended complaints note "problems that existed in the realm of digital data compression" that the claimed invention sought to solve, *Id*. ¶ 20, is irrelevant to whether the '908 patent solved them, and particularly irrelevant to whether it solved them in a non-abstract manner.

The purportedly "novel approaches" taught in the specification simply identify the patent's goal: to "reduce the time to store and retrieve data" and increase

"data storage and retrieval bandwidth." *Id*. ¶ 21 But parroting the patent's objective doesn't address whether the claims are abstract.

Quoting the specification at length, Plaintiff alleges that the "claims do not merely recite a result." *Id*. ¶¶ 22-24. But the Court has already reviewed the '908 patent (including portions recited as "allegations") in its entirety. Quoting the patent verbatim doesn't put new evidence before this Court and shouldn't change its conclusions.

### (2)    The '908 Patent Still Fails *Alice* at Step Two.

Plaintiff alleges that the '908 patent claims an unconventional data accelerator configured to compress two data blocks with different compression techniques, and memory device. The "data accelerator is [allegedly] unconventional" because "it requires compression encoders using two different compression techniques and the structural capability of compressing and storing digital data on a memory device" faster than uncompressed data can be stored on the device. D.I. 61 ¶ 25. Plaintiff again confuses "[t]he eligibility inquiry [which] determines whether a claim is limited meaningfully to permissible subject matter" with the "distinct … validity requirements of" sections 102 and 103. *Alice*, 717 F.3d at 1302-03. That Defendants haven't yet asserted prior art that discloses the "occurs faster than" limitation is immaterial, as are PTAB proceedings addressing obviousness. D.I. 61 ¶ 27.

23

Plaintiff again lists dependent claim limitations that purportedly "recite unconventional elements taken alone, or as an ordered combination." *Id*. ¶ 29. Even if, for example, "claims 2-3, 22 require a data accelerator that has the structural capability of storing a data descriptor on the memory device," *id.*, the patent doesn't claim the invention of a data accelerator, merely its use. And none of the additional limitations—*e.g.*, receiving data blocks over a communication channel, using dictionary compression as a second technique, using "an industry standard disk interface" as a coupler—is unconventional.

### b)   The '530 Patent

The Court previously held that the '530 patent, like the '908 patent, "is directed to the abstract idea of compressing data with multiple distinct compression methods with the required result that storage is faster." D.I. 41 at 31. The speed limitation is a result-based condition that doesn't transform this abstract idea into a patent-eligible application. *Id.* at 30. Plaintiff's additional allegations do nothing to change the Court's analysis at steps one or two of the *Alice* test.

Plaintiff's allegation that the claims "are limited to particularized technological solutions that improve computer capabilities" (D.I. 69 ¶ 49), contradicts the language of the claims, which broadly cover the abstract idea of using multiple compression methods. The allegation that these methods are "incapable of being performed by pen and pencil[,]" (*id.* ¶ 50), is irrelevant. *See FairWarning*, 839

F.3d at 1098.  As the Court previously explained, storage of data on memory is a routine, conventional step, and the speed is a results-based condition. D.I. 41 at 30-31.

Plaintiff's claim construction allegations don't change the analysis either. Plaintiff doesn't explain ***how*** its proposed constructions for "data accelerator," "data block," and "compressing/compressed/compression," and its arguments about "digital data" render the purported invention unconventional or ***how*** they transform the abstract idea into something unconventional. D.I. 69 ¶¶ 48, 51. Even with respect to the "data accelerator" (*id*. ¶ 57), the allegedly unconventional property is that it performs the abstract idea: data compression and faster storage. *See* D.I. 41 at 30.

Nor do Plaintiff's conclusory allegations about novelty and the technological problems being solved save its claims. *See* D.I. 69 ¶¶ 52-56. Other than claim 24, Plaintiff doesn't tie its allegations about the specification to any claim limitations or its own proposed constructions. In fact, these allegations admit that the patent is directed to the abstract idea of using multiple different compression encoders. D.I. 69 ¶ 52. Claim 24's bandwidth compatibility limitation fares no better absent allegations that bandwidth compatibility between a processor and a data storage device is novel or unconventional. The specification merely discusses routine steps that can be used to accommodate these mismatches. '530 patent at 5:51-63, 6:10-37.

As with the other patents, Plaintiff's assertions that the '530 patent requires an "unconventional combination of elements," (D.I. 69 ¶ 57) and that the limitation "occurs faster than" is unconventional (*id.* ¶ 58) are also conclusory, unsupported, and contrary to law. *See CustomediaTechs.*, 951 F.3d at 1365 ("generic speed and efficiency improvements" not patent-eligible). Plaintiff provides no factual content for ***why*** these are unconventional. Nor does it appear that the structural limitations of a memory device, the software or hardware of the data accelerator, or data blocks, alone or in combination, are in any way unconventional except that they apply the claimed abstract idea. Faster data storage is a result-based limitation that cannot render claims patentable. D.I. 41 at 30.

Plaintiff's allegations regarding examination and re-examination of the '530 patent and PTAB challenges (D.I. 69 ¶¶ 58-60, 62-64) again confuse "[t]he eligibility inquiry [which] determines whether a claim is limited meaningfully to permissible subject matter" with the "distinct … validity requirements of" sections 102 and 103. *Alice*, 717 F.3d at 1302-03. Even "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Further, the patent examination and reexamination were both completed ***before*** the Supreme Court's *Alice* decision, and thus the PTO could not consider that test. Additionally, the USPTO's 2019 Guidance is non-binding and

26

cannot contradict Supreme Court or Federal Circuit precedent relied upon by the Court in its prior opinion. *In re Rudy*, 956 F.3d 1379, 1383 (Fed. Cir. 2020).

Finally, Plaintiff's assertion that claim 1 isn't representative cannot save the other claims. *See* D.I. 69 ¶ 61. Plaintiff makes the conclusory allegation that the dependent claims "further confirm" the alleged eligibility by "recit[ing] unconventional elements." *Id.* ¶ 61. But the additional limitations in the dependent claims don't remedy this problem because there is nothing unconventional about them. *See WhitServe LLC v. Dropbox, Inc*, No. 18-665-CFC, 2019 WL 3342949, at *5 (D. Del. July 25, 2019) (citing cases).

Unlike in *Aatrix*, the alleged "improvement in the computer technology itself," 882 F.3d at 1127, is irrelevant because the results-based limitation of increased speed is insufficient for eligibility. *See* D.I. 69 ¶¶ 49-50; *cf. WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 581 (D. Del. 2019) ("improving the speed and efficiency" of abstract idea doesn't confer patent-eligibility). And unlike in *Cellspin*, where allegations in the complaint related specifically to the claimed invention, 927 F.3d at 1317-18, here, the allegations aren't tied to the claims.

### c)   The '458 Patent

Like the '908 patent, the '458 patent "requires the compression of at least two distinct data blocks and that the time for compression and storage be faster than the time for storage without compression for the first data block." D.I. 41 at 33. The

"difference between the two patents," the Court noted, is that the '458 patent "requires two distinct lossless compression techniques." *Id.*

However, the "restriction to lossless compression algorithms" "does not make the patent any less directed to an abstract idea," because a lossless compression algorithm is simply "a mathematical procedure and is thus not patent-eligible on its own." *Id.* at 34-35. Moreover, as "lossless compression algorithms were well-understood at the time of patenting" ('908 patent at 1:54-59), limiting the claimed abstract idea to "well-known algorithms does not add an inventive step." *Id.* at 35. The '458 patent remains ineligible for largely the same reasons as the '908 patent.

### (1)    The '458 Patent Still Fails *Alice* at Step One.

The Court found claim 9 representative because each independent claim is directed to the same ideas, "merely expressed in slightly different ways." *Id.* at 34. Each dependent claim is "directed to the same informational process, but merely limit[s] the process to well-understood environments or add[s] additional abstract steps." *Id.* Plaintiff offers no persuasive reason to deviate from these conclusions.

As with the other asserted patents, the claims of the '458 patent merely recite abstract ideas related to data compression and storage. *CustomediaTechs.*, 951 F.3d at 1365. Neither the claims nor the specification recite any technological improvement, but instead simply describe a form of data manipulation and analysis that the Court previously, and correctly, found abstract.

The '458 patent doesn't provide "particularized technological solutions that improve computer capabilities," as Plaintiff asserts (D.I. 45 at ¶ 17), but rather recites a generic process of "analyzing" data to identify an attribute, then "compressing" the data based on the identified attribute, and repeating that process with a second compression algorithm, which is no less abstract than a single algorithm. *Content Extraction*, 776 F.3d at 1349. Nor does adding the result of this abstract process (faster storage) make it any less abstract. *Elec. Power*, 830 F.3d at 1354. The claimed benefit of faster storage is merely the result of utilizing well-known data compression techniques, not the result of anything claimed in the '458 patent.

### (2)    The '458 Patent Still Fails *Alice* at Step Two.

The claims of the '458 patent add nothing to the abstract idea of data manipulation, much less the "significantly" more required for an inventive concept. The '458 patent discusses compression devices (encoders), lossless dictionary compression methods, and storage devices—each of which, individually, the '458 patent specification admits were well-known, routine, and conventional techniques and methods. *See* '458 patent at 5:47-50 (storage devices including RAM, magnetic and optical tape/disks, solid-state mass storage), 7:64-8:2, 9:11-15 (lossless memory compression methods including dictionary compression, run length encoding, mull suppression, and arithmetic compression); 12:20-21 (run length, Huffman, Lempel-

29

Ziv Dictionary Compression, arithmetic coding, data compaction, and data null suppression); 11:48-65 ("any conventional compression/decompression system and method … may be employed" as an encoder, citing prior art patent applications from 1998).

The '458 patent provides only functional claim limitations, with no details as to *how* the claimed functions are performed—not how data is analyzed, how an encoder is selected, how data is compressed, nor how data is stored. Analyzing a data stream to determine a "parameter" doesn't provide an inventive concept because the next limitation is to "apply a first encoder associated with the [first] parameter." *See Alice*, 717 F.3d at 1291 ("stating the abstract idea … and adding the words: 'apply it' on a computer … is not sufficient"). The claims and specification describe no method, criteria, or other inventive idea for *how* an encoder should be chosen. *Elec. Power*, 830 F.3d at 1356 ("[T]here is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general."). The '458 patent simply states that an encoder should be chosen to improve speed and provide a continuous data stream. Such vague limitations do not make an abstract idea a patent-eligible invention.[8]

---

[8] The dependent claims add no inventive concept because each limitation is an insignificant change that does no more than narrow or "reformulate" the abstract idea. *BSG Tech.*, 899 F.3d at 1291.

Nor does employing two encoders using two different conventional compression techniques amount to significantly more. The claims merely recite that two different encoders compress two completely unrelated data packets. Individually, each of these processes is merely an abstract idea, and "[a]dding one abstract idea… to another abstract idea… does not render the claim non-abstract." *RecogniCorp*, 855 F.3d at 1327.

Plaintiff's attempt to inject alleged improvements from the specification into the complaint is similarly unavailing. D.I. 62 ¶¶ 21-24. These methods and structures are neither claimed nor unconventional. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("[R]eliance on the specification in the § 101 analysis must always yield to the claim language… and the specification cannot be used to import details from the specification if those details are not claimed."). Choosing an encoder to compress data to decrease data storage time is the abstract idea itself. *Id*. at 774 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept.").

Again, it is irrelevant whether the claims couldn't be performed with a pencil and paper, that the claims may be directed to "digital data," that the claims are allegedly novel, or that the PTO and the PTAB considered prior art (but never eligibility). None of Plaintiff's new allegations on these points makes the '458 patent eligible under Section 101.

31

### 3. Plaintiff's New Allegations Don't Change the Court's Prior Eligibility Analysis of the '751 Patent.

The '751 patent "is directed to another variation on the theme of using compression to achieve faster data storage," "combin[ing] ideas" from the '825 and '908 patents. D.I. 41 at 36. The '751 patent is "directed to the abstract idea of compressing data with a state machine, under conditions where compressing and storing the data is faster than storing the uncompressed data and where the compression method applied to the data is based on the content of the data." *Id.* at 36. The '751 patent is no more inventive than either the '825 or '908 patent, and is patent-ineligible for substantially the same reasons. D.I. 41 at 37.

Plaintiff's amended complaints change none of these conclusions. Indeed, many of the amended paragraphs added by Plaintiff to its complaints against other Defendants were already present in its First Amended Complaint against Kaminario. *Kaminario*, D.I. 18. All of these arguments have already been considered and rejected by the Court.

The few new arguments couched as allegations don't provide a basis for the Court to reconsider its holding that the '751 patent is directed to an abstract idea.

Plaintiff's amended complaints challenge the Court's identification of an abstract idea, alleging that the claims of the '751 patent are directed to "selecting an encoder to encode data based on more than just a computer descriptor, but instead the content of the data." D.I. 63 ¶ 50. However, at *Alice* step one, it is the Court's

32

role to determine whether the "character [of the claims] as a whole is directed to excluded subject matter," regardless of Plaintiff's conclusory allegations. D.I. 41 at 18.

The only additional element in the '751 patent is a "state machine." A "state machine is an abstract model in certain compression methods,"[9] which the '751 patent admits were well-known in the art. D.I. 41 at 36-37. Although Plaintiff alleges that "state machines are specific computer solutions to computer problems" (D.I. 63 ¶ 57), the Court considered and rejected that assertion in connection with the prior *Kaminario* motion to dismiss. *Kaminario*, D.I. 33 at 10, 23, 34. Plaintiff merely cites and paraphrases portions of the specification of the '751 patent that have been before the Court since inception of this suit. Plaintiff has provided neither new facts nor new arguments to challenge the Court's conclusion that a "state machine" is merely "an abstract component in a method for information processing." D.I. 41 at 36-37.

---

[9] In fact, a computer is merely a kind of state machine—a Turing-complete state machine. The '751 patent includes "state machines" among the list of possible "dedicated processing hardware". '751 patent at 8:10-17. Thus, a state machine is not a "specific computer solution," it is just the computer itself, and a limitation that "compressing includes utilizing a state machine" is no narrower than merely claiming to "do it on a computer." *Alice*, 573 U.S. at 223 ("Stating an abstract idea while adding the words apply it with a computer is not patent-eligible" (quotations omitted)).

## IV.   CONCLUSION

Plaintiff's new allegations do not and cannot change the abstract nature of its patents. Nor do its allegations show that the patents claim an inventive step needed to overcome their abstract nature. Plaintiff's amended complaints should be dismissed for the same reasons the Court already dismissed Plaintiff's initial complaints twice.

Dated:  June 29, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Brian E. Mitchell
MITCHELL & COMPANY
4 Embarcadero Center, Suite
1400
San Francisco, CA  94111
(415) 766-3515

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Panzura, Inc.*

MORRIS JAMES LLP

OF COUNSEL:                           /s/ Kenneth L. Dorsney
                                      Kenneth L. Dorsney (#3726)
Joshua M. Masur                       500 Delaware Avenue, Suite 1500
ZUBER LAWLER LLP                      Wilmington, DE  19801
2000 Broadway Street, Suite 154       (302) 888-6800
Redwood City, CA  94063               kdorsney@morrisjames.com
(650) 434-8538

                                      Attorneys Defendant Aryaka Networks, Inc.


ASHBY & GEDDES

/s/ Andrew C. Mayo

OF COUNSEL:                           _____
                                      John G. Day (#2403)
Guy Yonay                             Andrew C. Mayo (#5207)
PEARL COHEN ZEDEK LATZER              500 Delaware Avenue, 8th Floor
BARATZ LLP                            P.O. Box 1150
Times Square Tower                    Wilmington, DE  19899
7 Times Square                        (302) 654-1888
New York, NY 10036                    jday@ashbygeddes.com
(646) 878-0800                        amayo@ashbygeddes.com

                                      Attorney for Ctera Networks, Ltd. and
                                      Reduxio Systems, Inc.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Brian P. Egan

OF COUNSEL:                           _____
                                      Jack B. Blumenfeld (#1014)
John (Jay) Neukom                     Brian P. Egan (#6227)
SKADDEN, ARPS, SLATE,                 1201 North Market Street
MEAGHER &                             P.O. Box 1347
  FLOM LLP                            Wilmington, DE 19899

35

525 University Avenue
Palo Alto, CA 94301
(650) 470-4500

Douglas R. Nemec
SKADDEN, ARPS, SLATE,
MEAGHER &
   FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Fortinet, Inc.*

OF COUNSEL:

Hilary L. Preston
Vinson & Elkins LLP
1114 6th Ave. 32nd Floor
New York, NY 10036
hpreston@velaw.com

Parker D. Hancock
Vinson & Elkins LLP
1001 Fannin St.
Houston, TX 77006
phancock@velaw.com

YOUNG    CONAWAY    STARGATT    &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Rolin P. Bissell (No. 4478)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rbissell@ycst.com
rvrana@ycst.com

*Attorneys for Defendant MongoDB Inc.*

36

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Nimbus Data, Inc.*


FISHER BROYLES, LLP

| OF COUNSEL: | */s/ Carl D. Neff* |
|---|---|
| Ryan T. Beard | Carl D. Neff (No. 4895) |
| FISHER BROYLES, LLP | Brandywine Plaza West |
| 100 Congress Avenue, Suite 2000 | 1521 Concord Pike, Suite 301 |
| | Wilmington, Delaware 19803 |
| Austin, Texas 78701 | Tel: (302) 482-4244 |
| ryan.beard@fisherbroyles.com | carl.neff@fisherbroyles.com |

*Attorneys for Defendant Egnyte, Inc.*

37

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                          */s/ Bindu A. Palapura*

Timothy Carroll                      David E. Moore (#3983)
DENTONS US LLP                       Bindu A. Palapura (#5370)
233 South Wacker Drive, Suite        Alan R. Silverstein (#5066)
5900                                 Hercules Plaza, 6th Floor
Chicago, IL  60606-6361              1313 North Market Street
(312) 876-8000                       Wilmington, DE  19801
                                     (302) 984-6000
Manny J. Caixeiro                    dmoore@potteranderson.com
Katherine R. McMorrow                bpalapura@potteranderson.com
DENTONS US LLP                       asilverstein@potteranderson.com
601 South Figueroa Street, Suite
2500                                 *Attorneys for Defendant Open Text, Inc.*
Los Angeles, CA  90017-5704
(213) 623-9300

Elizabeth M. Manno
DENTONS US LLP
1400 Wewatta, Street Suite 700
Denver, CO 80202
(303) 634 4000

Steve Sprinkle
Scott Crocker
SPRINKLE IP LAW GROUP
1301 West 25th Street, Suite 408
Austin, TX  78705
(512) 637-9220

38

BUCHANAN INGERSOLL & ROONEY
PC

*/s/ Geoffrey Grivner*
Geoffrey Grivner (DE Bar No. 4711)
919 North Market Street, Suite 990
Wilmington, DE  19801
Tel: (302) 552-4207
Fax: (302) 552-4200
geoffrey.grivner@bipc.com

*Attorneys for Array Networks Inc.*


**K&L GATES LLP**

Of Counsel:

*/s/ Steven L. Caponi*

**K&L GATES LLP**
Theodore J. Angelis
Elizabeth J. Weiskopf
Nicholas F. Lenning
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
theo.angelis@klgates.com
elizabeth.weiskopf@klgates.com
nicholas.lenning@klgates.com

Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 N. King Street, Suite 901
Wilmington, DE 19801
(302) 416-7080
steven.caponi@klgates.com
matthew.goeller@klgates.com

*Attorneys for Defendant Quest Software Inc.*

39

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME DATA, LLC, d/b/a IXO, | C.A. No. 1:17-cv-00800-CFC |
| Plaintiff, | **Consolidated Actions** |
| v. | |
| ARRAY NETWORKS INC., | |
| Defendant. | |

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that the forgoing brief contains 7,543 words (exclusive of the cover page, table of contents, table of authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.  *See* D.I. 73.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com

## CERTIFICATE OF SERVICE

I, Robert M. Vrana, hereby certify that on June 29, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| | |
|---|---|
| Stephen B. Brauerman | Marc A. Fenster |
| BAYARD, P.A. | Reza Mirzaie |
| 600 N. King Street, Suite 400 | C. Jay Chung |
| Wilmington, DE 19801 | Paul A. Kroeger |
| sbrauerman@bayardlaw.com | RUSS AUGUST & KABAT |
| | 12424 Wilshire Boulevard, 12th Floor |
| | Los Angeles, CA 90025 |
| | mfenster@raklaw.com |
| | rmirzaie@raklaw.com |
| | jchung@raklaw.com |
| *Attorneys for Plaintiff* | pkroeger@raklaw.com |

I further certify that on June 29, 2021, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel.

Dated: June 29, 2021

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com