# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

REALTIME DATA, LLC d/b/a IXO,

    Plaintiff,

v.

ARRAY NETWORKS INC.,

    Defendant.

C.A. No. 1:17-cv-00800-CFC

**Consolidated Actions**

## DEFENDANTS' CONSOLIDATED REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM (35 U.S.C. § 101)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................1

II.    LEGAL ARGUMENT...................................................2

    A.   Realtime Conflates Its Analysis of Seven Separate Patents. ...............2

    B.   Realtime Presented No New Arguments in Its Response ....................3

    C.   The Recent Federal Circuit Precedent Cited by Realtime Confirms
        that Its Asserted Claims are Nothing More than Abstract Ideas
        Carried Out by Generic and Routine Processes ...................................6

        1.   The Federal Circuit's Recent Decision in Yu v. Apple
            Inc. Confirms that This Court's Prior Holding of Patent
            Ineligibility was Correct ............................................6

        2.   Realtime Misappropriately and Misleadingly Analogizes
            the Patents-in-Suit to Inapposite Third-Party Patents.................8

    D.   Analogous Federal Circuit Precedent Confirms that the Asserted
        Patents Claim Abstract Ideas Implemented with Generic and
        Routine Processes................................................14

III.   CONCLUSION...........................................................17

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ...........................................10, 15, 16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019) ..................................................8, 9, 11

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
  965 F.3d 1299 (Fed. Cir. 2020) ............................................................13

*Realtime Data, LLC v. Kaminario*,
  No. 19-350-CFC, D.I. 33 ..............................................................3, 4, 5

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019) ..................................................13, 15

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ..................................................12, 13

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020) ............................................................11

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ..........................................9, 10, 11, 13

*WhitServe LLC v. Donuts Inc.*,
  390 F. Supp. 3d 571 (D. Del. 2019) ....................................................14

*Yu v. Apple Inc.*,
  No. 2020-1760, 2021 U.S. App. LEXIS 17434
  (Fed. Cir. June 11, 2021) ..............................................................6, 7, 8

## I.     INTRODUCTION

In moving to dismiss plaintiff Realtime Data, LLC's amended complaints, defendants explained *separately* for each patent why it claims ineligible subject matter. In response, Realtime lumped together its generalized arguments regarding the asserted patents—even though, as Realtime itself noted, there are "211 claims across seven patents and three distinct patent families." D.I. 91 at 15. Realtime's high-level generalizations are insufficient to avoid dismissal.[1]

Beyond its conclusory arguments about the patents in toto, Realtime continues to invoke prior judicial decisions that do not constrain this Court's independent decision-making. Tacitly acknowledging this, plaintiff suggests that Judge Taranto's concurrence in the *Reduxio* appeal dictates the outcome here. (D.I. 91 at 3.) Not so. The Federal Circuit's decision in *Reduxio* makes clear that it was *not* dictating the ultimate outcome. Indeed, the Court expressly stated that it would not adjudicate the merits of patent eligibility under Section 101.

Substantively, Realtime largely repeats arguments already fully considered and rejected by this Court. In doing so, Realtime relies on cases that are inapposite, while disregarding more analogous caselaw.

---

[1] Realtime's amended complaints do not address all 211 claims across the seven patents. Realtime cannot have it both ways—it cannot hide behind the large number of claims and then fail to distinguish between those claims in any meaningful way.

In short, Realtime fails to provide any persuasive reason why the Court should not reach the same conclusions it did in dismissing the original complaints.

## II.   LEGAL ARGUMENT

### A.   Realtime Conflates Its Analysis of Seven Separate Patents.

Realtime asserts seven separate patents in this action.

Three patents, entitled Data Compression Systems and Methods," (U.S. Patents Nos. 8,717,203; 8,933,825; and 9,054,728), describe ways to compress data that look beyond data descriptors (*e.g.*, .doc or .txt) to the attributes of the data itself. In moving to dismiss, defendants addressed these patents individually, explaining how the claims of each patent are directed to ineligible abstract ideas.

Similarly, defendants separately discussed three asserted patents (U.S. Patent Nos. 7,415,530; 9,116,908; and 10,019,458), directed to "Accelerated Data Storage and Retrieval" using "lossless data compression and decompression" techniques.

Lastly, defendants individually addressed the claims of U.S. Patent No. 9,667,751, which purport to improve on prior art data compression systems and methods through a "data compression ratio" that is "repeatable on each data packet" with "no packet-to-packet data dependency." '751 patent at 7:55-66.

In responding to the motion to dismiss, Realtime pointed out that the asserted patents contain 211 claims, but then made no effort to discuss the specific elements of those claims. Indeed, Realtime barely distinguished even the patents in

the two patent families at issue. *See* D.I 91 at III.A.2 & III.A.3. Realtime's broad and conclusory arguments—untethered to any specific claim limitations or even specific claims—are insufficient to avoid dismissal.

### B.      Realtime Presented No New Arguments in Its Response

The Court has already considered and rejected the arguments presented by Realtime in its original memorandum opinion (D.I. 41), as discussed below. Realtime has presented no reason for the Court to reconsider its prior decisions. Accordingly, the Court need not revisit these issues.

First, the Court expressly rejected Realtime's arguments that "fact-based claim constructions" preclude dismissal. (D.I. 41 at 50-51). Thus, the Court need not reconsider Realtime's arguments to the contrary. Indeed, Section III.C of Realtime's Opposition Brief (D.I. 91) is *nearly identical* to Section IV.C of Realtime's Opposition to Kaminario's Motion to Dismiss, and both sections bear an identical title. (*Realtime Data, LLC v. Kaminario* ("*Kaminario*"), No. 19-350-CFC, D.I. 33, at 36-38); *see* Ex. 1. As the Court recognized, Realtime's proposed constructions "confirm that the claims are directed to data analysis," and thus, "there is no claim construction dispute relevant to eligibility." D.I. 41 at 50-51. As Realtime has presented no new argument here, there is nothing further for the Court to decide.

Second, the Court has already decided that the claims of each Asserted Patent rise and fall with the Court's selected representative claims. Again, Realtime has

presented the Court with nearly identical arguments here. *Compare* D.I. 91, at 34 to *Kaminario*, D.I. 33 at 35-36; *see also* Ex. 1. But the Court has reviewed the non-representative claims of each of the seven patents and found that no limitation therein affects the § 101 analysis. D.I. 41 at 16-17 ('825 Patent), 26-27 ('728 Patent), 29-30 ('908 Patent), 32-33 ('530 Patent), 34 ('458 Patent), 36 ('751 Patent), 38-39 ('204 Patent), 39-40 ('203 Patent). As Realtime has failed to separately argue any of these claims or present any new argument regarding any of them, the Court need not revisit its decision to invalidate the asserted patents.

Third, the Court has already thoroughly reviewed the intrinsic record and rejected Realtime's arguments that the record demonstrates any "unconventional technological solutions" in the claims. D.I. 41 at 41, 52-53. Indeed, *nothing* in the amended complaints changed the intrinsic record before the Court, as each asserted patent was attached to the original complaints. *See, e.g.*, *Kaminario*, D.I. 1, Exs. A-C. Realtime even previously argued this point to the Court. *Compare* D.I. 91, 26-29 *with Kaminario*, D.I. 33 at 30-33. Again, there is nothing in these repeated arguments meriting further consideration.

Fourth, Realtime has presented no reason for the Court to revisit its finding that the claims can be "done on pen and paper." D.I. 41 at 24-25. Realtime attempts to create a new issue by including legal argument in Realtime's Amended Complaints that the claims of the '908 Patent cannot be done using pen and paper.

D.I. 53 at ¶ 111. Even if the Court was obliged to accept that legal conclusion as true, the remaining asserted patents would nonetheless be invalid. But the Court is not obligated to accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Consistent with its prior decision, the Court may draw all factual inferences in Realtime's favor yet reject the legal conclusion that the claims cannot be performed with pen and paper. Indeed, the only argument presented by Realtime is that "it is not possible to ensure by pen and paper that compression and storage time occurs faster than storage without compression." D. I. 53, at ¶ 111. But such a method can clearly be performed by a human with pen and paper, perhaps with the addition of a stopwatch. Thus, the Court need not reconsider whether the claims of the asserted patents can be performed on pen and paper.

Fifth, Realtime yet again attempts to argue that the decisions of other courts and statements in unrelated patents preclude dismissal. D.I. 91 at 34-35. But the Court has already considered and rejected any argument that it is bound by prior court decisions. D.I. 41 at 45 n.4. The same allegations argued by Realtime here were previously included in the First Amended Complaint against Kaminario, filed well before the Court's Memorandum Opinion. *See Kaminario*, D.I. 18. Thus, the Court has already decided that these allegations make no difference in its ultimate conclusion that the asserted patents are invalid.

In short, Realtime's repetition of rejected arguments should be disregarded.

C.     **The Recent Federal Circuit Precedent Cited by Realtime
       Confirms that Its Asserted Claims are Nothing More than
       Abstract Ideas Carried Out by Generic and Routine Processes**

Realtime attempts to draw parallels to different litigations concerning different patents, including (inexplicably) claims that have been held patent-ineligible. The claims upheld in those other cases are found in readily distinguishable patents and lend no credence to Realtime's eligibility arguments.

1.     **The Federal Circuit's Recent Decision in *Yu v. Apple Inc.*
       Confirms that This Court's Prior Holding of Patent
       Ineligibility was Correct**

The Federal Circuit has repeatedly and recently held as ineligible claims "'directed to a result or effect that itself is [an] abstract idea and merely invoke[] generic processes and machinery' rather than a 'specific means or method that improves the relevant technology.'" *Yu v. Apple Inc.*, No. 2020-1760, 2021 U.S. App. LEXIS 17434, *4-5 (Fed. Cir. June 11, 2021) (quoting *Smart Sys. Innovations, LLC v. Chi. Transit Authority*, 873 F.3d 1364, 1371 (Fed. Cir. 2017)).

In *Yu*, similarly to Realtime, the plaintiff contended that its asserted claims were directed to a patent-eligible application of an abstract idea as opposed to just the idea itself. *Id.* at *5. For example, Yu argued that the asserted claims were directed to an improvement in digital camera functionality by providing a specific solution to problems. *Id.* at *6. However, the district court and the Federal Circuit found that the claim language itself undercut plaintiff's contention: the claims recite

only conventional camera components that perform only their basic functions and are set forth at a high degree of generality, thereby claiming "simply a generic environment in which to carry out the abstract idea." *Id.* at *5-6 (citing *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). This is consistent with this Court's reasoning in previously holding Realtime's patents-in-suit ineligible.

Similar to Yu's ill-fated arguments, Realtime contends that its claims are directed to patent-eligible improvements in data compression technology. But Realtime's claimed "solution to [the alleged] problems is the abstract idea itself"— to take data and compress it or decompress it based on the type of data it is. *Cf. id.* at *6-7. Neither the claims nor the specifications of the asserted patents contain specific details of any technological advancements. "[T]he breadth of [the asserted claims] underscores that the focus of the claimed advance is the abstract idea and not the particular configuration discussed in the specification that allegedly departs from the prior art." *Id.* at *9. Realtime's patents merely claim data processes that behave exactly as expected according to their ordinary use and are recited at a high level of generality, invoking routine steps to apply the abstract idea itself. *See id.* (citing *TLI Commc'ns*, 823 F.3d at 615). In sum, the generic compression and decompression processes and hardware "merely serve as a conduit for the abstract

idea" of compression and decompression according to data type. *Id.* (quoting *TLI Commc'ns*, 823 F.3d at 612).

### 2. Realtime Misappropriately and Misleadingly Analogizes the Patents-in-Suit to Inapposite Third-Party Patents

Realtime cites to distinguishable cases concerning patent-eligible claims. *See, e.g.*, D.I. 91 at 3, 12-16, n.3; D.I. 91-1 (Ex. 1). None of those cases supports finding the asserted patents eligible under Section 101. Incredibly, Realtime contends that its asserted claims "are at least as specific, if not more specific, than [*sic*] the claims at issue" in the cases cited in Exhibit 1. *Id.* at 16 n.3 (referring to the comparisons in Exhibit 1). However, Realtime misleadingly concocts claim charts that, in putting form over substance, give only the appearance of more specific claims. *See generally* D.I. 91-1 (illogically pairing multiple or disparate claim limitations with Realtime's '728 patent claims). One of the comparison claims was in fact held *ineligible*. Another was not reviewed on appeal, as Realtime implies in its brief. The upheld claims included precisely the type of specificity that Realtime's asserted claims lack.

In *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), the Federal Circuit reversed a finding of patent ineligibility as to **claims 2-4** of U.S. Patent No. 6,212,662. *See id.* at 1145-46. Realtime misleadingly compares **claim 1** of the '662 patent to claim 1 of Realtime's '728 patent. Claim 1 of the '662 patent was held patent *ineligible* by the district court, and Koninklijke did not appeal that holding. *Id.* at 1145. By arguing that this Court should treat Realtime's asserted

claims in the same manner as claim 1 of the '662 patent, Realtime effectively admits that the asserted claims are ineligible.

Even claims 2-4 at issue in *Koninklijke KPN* do not help Realtime. The Federal Circuit concluded that claims 2-4 applied an eligible permutation applied to original data to be modified in time, as opposed to merely claiming "[a]n improved result, without more stated in the claim, [which] is not enough to confer eligibility to an otherwise abstract idea." *Id.* at 1150 (citing *Finjan*, 879 F.3d at 1305). The Federal Circuit repeatedly emphasized that its reasoning applied to only the "appealed claims" (claims 2-4). *See generally id.* at 1146-50. The district court's ineligibility analysis focused on claim 1, which Koninklijke did not appeal. *Id.* at 1148. In particular, "the district court explained that the claims of the '662 patent are abstract because they do not say how data is reordered, how to use reordered data, how to generate additional data, how to use additional data, or even that any data is transmitted." *Id.* (internal quotation omitted). This is precisely the shortcoming of Realtime's asserted claims.

In *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), the Federal Circuit held the claims of U.S. Patent No. 5,953,740 to be patent eligible because "they are directed to an improved computer memory system, *not to the abstract idea of categorial data storage*." *Id.* at 1259 (emphasis added). In contrast, Realtime's asserted patents are precisely the latter classification: categorial data

9

storage based on data type without any specifically claimed or described improvements to computer systems. The *Visual Memory* court explained that its holding was based upon the '740 patent's explanation that the characteristics are defined through configuration based on the type of processor in the computer. *See id.* The '740 patent specification includes examples of how the data is stored based on specific types of processors. *See id.* at 1261-62.

Additionally, the Federal Circuit noted that the '740 patent "includes a microfiche appendix having a combined total of 263 frames of computer code." *Id.* at 1261. Realtime's patents—especially the '728 patent and related patents, to which Realtime compares the *Visual Memory* '740 patent—do not contain any specific code or examples of how to implement the abstract claims other than as a mere idea. Rather, the Realtime patents are more akin to the *Content Extraction*[2] and *TLI Communications* patents discussed in the *Visual Memory* opinion as being patent *ineligible*. Just like Realtime's patents, the Federal Circuit explained that the patents in *TLI Communications* were "directed to the abstract idea of classifying and storing digital images in an organized manner." *Visual Memory*, 867 F.3d at 1260 (internal quotation omitted).

---

[2] *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014).

In *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020), the Federal Circuit reviewed representative **claim 2** of U.S. Patent No. 6,993,049,[3] not **claim 1**, which Realtime uses for its comparison. *Compare Uniloc*, 957 F.3d at 1305 *with* D.I. 91-1 at p. 4 of 6. The Federal Circuit noted that the '049 patent specification explains that the claimed invention "improves conventional communication systems by including [with a primary station] a data field for polling [a secondary station] as part of the inquiry message, thereby allowing primary stations to send inquiry messages and conduct polling simultaneously." *Uniloc*, 957 F.3d at 1305.

Unlike Realtime's '728 patent and related patents, the *Uniloc* '049 patent specification disclosed specific polling configurations and frequencies to accomplish the claimed improvement (*see, e.g.*, '049 patent at col. 4, l. 59 – col. 7, l. 2), taking it out of the realm of a mere abstract idea. Notably, the Federal Circuit summarized its holding in *Visual Memory* as finding the claims eligible because they "were not directed to categorical data storage but rather were limited to certain types of data to be stored." *Uniloc*, 957 F.3d at 1307. Realtime's claims are akin to categorical data storage.

---

[3] The '049 patent issued to Koninklijke Philips Electronics N.V. This is not to be confused with the '662 patent in the *Koninklijke KPN* case discussed *supra*.

Finally, in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), the Federal Circuit upheld the district court's determination of patent eligibility of four TecSec patents that are extremely different from Realtime's patents-in-suit.[4] As with the three prior cases, Realtime's Exhibit misleadingly combines multiple claim elements into a single cell of the claim chart in an effort to give the appearance that the '728 patent is more complex or specific. This is most profound with respect to the *TecSec* claim. But window dressing cannot substitute for lack of substance.

The TecSec patents concern "a method in which a digital object . . . is assigned a level of security that corresponds to a certain combination of access controls and encryption [and] can then be embedded or 'nested' within a 'container object,' which . . . provides a second layer of security." *TecSec*, 978 F.3d at 1282. Of the nine steps recited in claim 1 of the TecSec '702 patent, the Federal Circuit emphasized the express requirement of accessing an "object-oriented key manager," specified uses of a "label," and encryption for the access management. *Id.* at 1295. The "key manager" was important during prosecution, and TecSec included details in the specification about the operation of the "key manager," which the district court relied upon in construing the claim term by defining its operation. *Id.* The Court also

---

[4] Realtime's claim chart (D.I. 91-1 at 5) ambiguously identifies the comparison claim as "Claim 1 of *TecSec* Patent," while the case actually concerned four patents. Realtime charted only claim 1 of U.S. Patent No. 5,369,702.

explained the interaction between the claimed labeling and encryption. *See id.* at 1295-96.

A review of all four TecSec patents reveals the level of specificity that is missing from Realtime's patents-in-suit. All four patents contain working examples of the claimed inventions, setting forth detailed descriptions of the hardware and processes embodied in the claims to achieve the desired improved security. *See, e.g.*, '702 patent at col. 7-11. Realtime's patents fall woefully short of the specificity in TecSec's patents, merely claiming the "abstract idea of categorial data storage." *Visual Memory*, 867 F.3d at 1259.

Realtime's additional cases are likewise irrelevant, as those patents claimed far more technical solutions than the Realtime patents, rendering them directed to patent-eligible subject matter at *Alice*, step one. In *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1308 (Fed. Cir. 2020), the district court made specific factual findings identifying a technical problem and solution: "prior art monitors could not identify disjointed connection flows as belonging to the same conversational flow, but the claimed invention could provide a granular, nuanced, and useful classification of network traffic."

Likewise, in *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303-4 (Fed. Cir. 2019), the Court found that the specification disclosed a specific technical problem and solution: "in conventional networks, seemingly localized triggering

events can have globally disastrous effects on widely distributed systems… the claimed invention is directed to solving these weaknesses in conventional networks and provides a framework for the recognition of more global threats to interdomain connectivity, including coordinated attempts to infiltrate or destroy connectivity across an entire network enterprise." (internal quotations omitted). Nothing in Realtime's patents or allegations in the complaint reflect a comparable level of technological detail.

### D. Analogous Federal Circuit Precedent Confirms that the Asserted Patents Claim Abstract Ideas Implemented with Generic and Routine Processes

Plaintiff argues that defendants' supporting cases are inapposite, referring and incorporating its prior opposition brief as support, and further contending that the asserted claims are distinguishable because they are directed to improving computer functionality. D.I. 91 at 23-24. According to Realtime, the asserted claims "are clearly directed to non-abstract improvements to the functionality of a computer" by increasing compression speed and efficiency. *Id.* at 24. But Plaintiff is wrong because such results-based limitations of increased speed and efficiency are insufficient for eligibility. *See WhitServe LLC v. Donuts Inc.,* 390 F. Supp. 3d 571, 581 (D. Del. 2019) (holding that "improving the speed and efficiency" of abstract idea does not confer patent-eligibility).

14

Further, none of the asserted claims improve computer functionality; rather, the asserted claims are directed to mere data manipulation and data processing in a non-inventive, conventional "order [that] logic requires." D.I. 41 at 24 (citing *Two-Way Media,* 874 F.3d at 1339 (holding that implementing abstract idea using "conventional ordering of steps" is not inventive). And as this Court already held, the Federal Circuit has repeatedly found that claims directed to mere data manipulation are patent ineligible. D.I. 41 at 11-12 ("The Federal Circuit has repeatedly held that manipulation of information is inherently abstract." (citing *RecogniCorp*, 855 F.3d at 1327; *SAP,* 898 F.3d at 1167; and *Elec. Power,* 830 F.3d at 1353)). This Court further held that the "asserted patents purport to teach the abstract manipulation of data and they lack any additional inventive features [and] are thus ineligible for patent protection." D.I. 41 at 12.

Contrary to Realtime's contention, this case *is* like *RecogniCorp*, *Content Extraction*, and *Electric Power*, wherein claims directed to data manipulation and/or processing were not patent eligible. For example, in *RecogniCorp*, the Federal Circuit held that claims covering processes for encoding and decoding digital images were directed to an abstract idea. 855 F.3d at 1326. The Court reasoned that the idea "reflect[ed] standard encoding and decoding, an abstract concept long utilized to transmit information," and that "a process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea." *Id.* at 1326-27.

In this case, the asserted claims are not meaningfully different, each claiming nothing more than mere data manipulation.[5] *See also Elec. Power,* 830 F.3d at 1351 ("[D]efining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101; *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions.").

As the Court has noted, ample caselaw clearly supports a finding that the asserted patents claim subject matter ineligible under Section 101. D.I. 41 at 11-12, 19. Realtime, apparently, knows as much. Trying to avoid the voluminous caselaw adverse to its position, Realtime crafted an exhibit that although it has the veneer of helpfulness to its cause, when carefully scrutinized, significantly distorts the facts and holdings of Federal Circuit caselaw. This desperate attempt only undermines the credibility of all Realtime's arguments.

---

[5] As the Court already held, the '825 patent claims compressing data based on content rather than descriptors (D.I. 41 at 16); the '728 patent claims "the same idea of compressing data based on the characteristics of that data" (*id*. at 26); the '203 patent claims compression and decompression similar to the '728 patent (*id.* at 39); the '908 patent claims compressing two different data blocks using different methods, wherein compression and storage are faster than uncompressed data (*id.* at 30); the '530 patent claims the ideas of the '908 patent but adds a compression indicator for decompression (*id.* at 31); the '458 patent likewise claims the ideas the '908 patent claims but adds two distinct lossless compression techniques (*id.* at 33); and the '751 patent claims the ideas of the '825 and '908 patents and adds state machine compression (*id.* at 36).

## III.   CONCLUSION

Realtime continues to advance the same unpersuasive arguments that this Court has already considered and rejected, without offering any compelling reason why amendments to its complaints compel a different result now. Seeking to avoid dismissal once again, Realtime resorts to conclusory and indiscriminate arguments about the patents, distorts Federal Circuit decisions, and sidesteps unfavorable caselaw. Its efforts should be rejected, and the amended complaints against all defendants dismissed with prejudice.

Dated:  July 20, 2021

OF COUNSEL:

Brian E. Mitchell
MITCHELL & COMPANY
4 Embarcadero Center,
Suite 1400
San Francisco, CA  94111
(415) 766-3515

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*
_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Panzura, Inc.*

17

OF COUNSEL:                          MORRIS JAMES LLP

Joshua M. Masur                     */s/ Kenneth L. Dorsney*
ZUBER LAWLER LLP                    Kenneth L. Dorsney (#3726)
2000 Broadway Street, Suite 154     500 Delaware Avenue, Suite 1500
Redwood City, CA  94063             Wilmington, DE  19801
(650) 434-8538                      (302) 888-6800
                                    kdorsney@morrisjames.com

                                    *Attorneys Defendant Aryaka Networks, Inc.*


OF COUNSEL:                          ASHBY & GEDDES

Guy Yonay                           */s/ Andrew C. Mayo*
PEARL COHEN ZEDEK LATZER
BARATZ LLP                          John G. Day (#2403)
Times Square Tower                  Andrew C. Mayo (#5207)
7 Times Square                      500 Delaware Avenue, 8th Floor
New York, NY 10036                  P.O. Box 1150
(646) 878-0800                      Wilmington, DE  19899
                                    (302) 654-1888
                                    jday@ashbygeddes.com
                                    amayo@ashbygeddes.com

                                    *Attorney for Ctera Networks, Ltd. and*
                                    *Reduxio Systems, Inc.*


OF COUNSEL:                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

John (Jay) Neukom                   */s/ Brian P. Egan*
SKADDEN, ARPS, SLATE,
MEAGHER &                           Jack B. Blumenfeld (#1014)
  FLOM LLP                          Brian P. Egan (#6227)
525 University Avenue               1201 North Market Street
Palo Alto, CA  94301                P.O. Box 1347
(650) 470-4500                      Wilmington, DE 19899

Douglas R. Nemec
SKADDEN, ARPS, SLATE,
MEAGHER &
  FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Fortinet, Inc.*


OF COUNSEL:

Hilary L. Preston
Vinson & Elkins LLP
1114 6th Ave. 32nd Floor
New York, NY 10036
hpreston@velaw.com

Parker D. Hancock
Vinson & Elkins LLP
1001 Fannin St.
Houston, TX 77006
phancock@velaw.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Rolin P. Bissell (No. 4478)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rbissell@ycst.com
rvrana@ycst.com

*Attorneys for Defendant MongoDB Inc.*

19

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Nimbus Data, Inc.*

OF COUNSEL:                           FISHER BROYLES, LLP

Ryan T. Beard                         */s/ Carl D. Neff*
FISHER BROYLES, LLP                   Carl D. Neff (No. 4895)
100 Congress Avenue                   Brandywine Plaza West
Suite 2000                            1521 Concord Pike, Suite 301
Austin, Texas 78701                   Wilmington, Delaware 19803
ryan.beard@fisherbroyles.com          Tel: (302) 482-4244
                                      carl.neff@fisherbroyles.com

                                      *Attorneys for Defendant Egnyte, Inc.*

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Timothy Carroll | /s/ David E. Moore |
| VENABLE LLP | _____ |
| 227 W Monroe St., Suite 3950 | David E. Moore (#3983) |
| Chicago, IL  60606 | Bindu A. Palapura (#5370) |
| (312) 820-3400 | Alan R. Silverstein (#5066) |
| Tjcarroll@venable.com | Hercules Plaza, 6th Floor |
| | 1313 North Market Street |
| Manny J. Caixeiro | Wilmington, DE  19801 |
| Laura A. Wytsma | (302) 984-6000 |
| 2049 Century Park East, | dmoore@potteranderson.com |
| Suite 2300 | bpalapura@potteranderson.com |
| Los Angeles, CA 90067 | asilverstein@potteranderson.com |
| | *Attorneys for Defendant Open Text, Inc.* |

| | |
|---|---|
| OF COUNSEL: | BUCHANAN INGERSOLL & ROONEY PC |
| S. Lloyd Smith | |
| Brian H. Gold | /s/ Geoffrey Grivner |
| BUCHANAN INGERSOLL | Geoffrey Grivner (DE Bar No. 4711) |
| & ROONEY PC | 919 North Market Street, Suite 990 |
| 1737 King Street, Ste. 500 | Wilmington, DE  19801 |
| Alexandria, VA  22314-2727 | Tel: (302) 552-4207 |
| | Fax: (302) 552-4200 |
| | geoffrey.grivner@bipc.com |
| | *Attorneys for Array Networks Inc.* |

OF COUNSEL*:*                            K&L GATES LLP

K&L GATES LLP                            */s/ Steven L. Caponi*
Theodore J. Angelis                      Steven L. Caponi (No. 3484)
Elizabeth J. Weiskopf                    Matthew B. Goeller (No. 6283)
Nicholas F. Lenning                      600 N. King Street, Suite 901
925 Fourth Avenue, Suite 2900            Wilmington, DE 19801
Seattle, WA 98104                        (302) 416-7080
(206) 623-7580                           steven.caponi@klgates.com
theo.angelis@klgates.com                 matthew.goeller@klgates.com
elizabeth.weiskopf@klgates.com
nicholas.lenning@klgates.com             *Attorneys for Defendant Quest Software Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME DATA, LLC, d/b/a IXO, | C.A. No. 1:17-cv-00800-CFC |
| Plaintiff, | **Consolidated Actions** |
| v. | |
| ARRAY NETWORKS INC., | |
| Defendant. | |

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that the forgoing brief contains 4,912 words (exclusive of the cover page, table of contents, table of authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature. *See* D.I. 73.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com

28385800

23

## CERTIFICATE OF SERVICE

I, Robert M. Vrana, hereby certify that on July 20, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Stephen B. Brauerman
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
sbrauerman@bayardlaw.com

Marc A. Fenster
Reza Mirzaie
C. Jay Chung
Paul A. Kroeger
Brian D. Ledahl
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
mfenster@raklaw.com
rmirzaie@raklaw.com
jchung@raklaw.com
pkroeger@raklaw.com
bledahl@raklaw.com

*Attorneys for Plaintiff*

I further certify that on July 20, 2021, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel.

Dated: July 20, 2021

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com